L. & N. RAILROAD *v.* M. & T. RAILROAD.

(*Jackson.* June 13, 1893.)

1. RAILROADS. *Rights of, under contract with city permitting construction of track upon streets for joint use.*

Under a contract by a city with a railroad company, in accordance with, which it permits the company to construct a track through its streets, on condition that the company permit any other railroad company to use the track, on paying a *pro rata* share of the cost of construction, without placing any limit on the time when other roads may come in, or their number, a delay in making application of nine years after its completion, during which two other roads have come in, is no ground for excluding an applicant where it is proved that the line will not be overburdened by its entrance, or that the parties or Court have power to prevent such result. (*Post, pp. 683, 684, 686, 687.*)

2. SAME. *Specific performance of contract for joint operation of road.*

A contract providing for the joint ownership and operation of the same line of road by several railroad companies, each having an undivided interest therein, is capable of specific performance. (*Post, pp. 688, 689.*)

Case cited and approved: 138 U. S., 1, 50.

3. SAME. *Same. Proper decree.*

A decree in a suit by a railroad company for the specific performance of a contract providing for the use by any railroad company of a line of road constructed by another company on payment of a *pro rata* share of the cost of construction and other expenses, of which two other companies have already availed themselves, properly directs the payment of the *pro rata* share into Court, instead of directly to the original company, especially where mortgages have been given upon the property. (*Post, p. 689.*)

4. SAME. *Have equal rights under contract with city for joint operation of road.*

Under a contract by a city with a railroad company for the construction of a track through its streets, containing a provision that it shall

L. & N. Railroad *v.* M. & T. Railroad.

allow any other railroad terminating in the city to use the road, upon payment of a *pro rata* share of the cost, any other company, upon entering, is not subordinate to the original builder.   (*Post, p. 690.*)

5. SAME.   *Estopped to exclude other companies from use of road.*

A railroad company which constructs a road through the streets of a city, under a contract that it will permit any other railroad company to use the track upon payment of a *pro rata* share of the cost, is estopped from excluding other companies on the ground that it purchased or condemned private lands for the use of the road for about one-seventh of the way.   (*Post, p. 690.*)

6. SAME.   *Same.*

A railroad company cannot exclude another company from using a track built by it through the streets of a city, under a contract with the city providing for the use of the track by any other company, on the ground that the applicant, by the terms of its charter, can use only animal power, when such applicant has for years used steam power and the city sanctions such use by joining in the petition and otherwise.   (*Post, p. 690.*)

Case cited and approved : Railroad *v.* Bingham, 87 Tenn., 527.

7. SAME.   *Foreign company not excluded from benefit of contract, when.*

A railroad company which has a contract with a city for the construction of its road through the city streets, providing that the company shall allow any other company terminating in the city to use the tracks on payment of a *pro rata* share of the cost, cannot exclude a foreign railroad company seeking to obtain such use, upon compliance with the provisions of the contract.   (*Post, pp. 690–692.*)

8. SAME.   *Correct decree.*

A decree that a railroad company, upon being allowed the use of a track through a city, under a contract by its original builder with the city providing that it shall allow any other railroad company to use its tracks "upon payment of a *pro rata* share, not exceeding the cost of constructing such track, bridges, depot houses, and other expenses thereunto pertaining," shall pay one-fourth of the operating expenses so long as it, the original road, and two other lines which had previously entered on the use of the track, shall continue to use them, is proper.   (*Post, p. 693.*)

9. FOREIGN CORPORATIONS.   *Right of foreign railroad to sue in this State.*

When the suit of a foreign railroad corporation was brought prior to passage of the Act 1891, Chapter 122, or when it does not affirma-

tively appear that the company has not complied with the requirements of that Act, the company's right to maintain the suit cannot be questioned upon the ground of non-compliance therewith.

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. W. D. BEARD, Ch.

JOHN P. HOUSTON and TURLEY & WRIGHT for Complainant.

HOLMES CUMMINS and C. F. VANCE for Defendant.

WILKES, J. On the twenty-first day of June, 1880, the Mississippi and Tennessee Railroad Company made a contract with the Taxing District of Shelby County to construct what is called, in the written agreement, a "Union Passenger and Freight Railroad" through the city of Memphis, from a point in the southern to a point in the northern part of the city.

By the sixteenth section of the contract it is provided that the Mississippi and Tennessee Railroad Company shall permit any other railroads terminating in the Taxing District of Memphis to use and enjoy said track and the rights and privileges granted, upon payment by such other rail-

road company to the Mississippi and Tennessee Railroad Company of a *pro rata* share, not exceeding the cost of constructing said track, bridges, depot, houses, and other expenses thereto appertaining, the franchise to extend for forty years. The road was to be a single track, and was to be so operated that trains of cars should not be run at intervals of less than thirty minutes, nor so close together as to impede travel on the streets crossed by the railroad nor on the levee.

Under the authority conferred by this contract, and in accordance with its provisions, the Mississippi and Tennessee Railroad Company constructed the road, and, after it was finished, the Chesapeake, Ohio and South-western Railroad Company and the Louisville, New Orleans and Texas Railroad Company each purchased a one-third interest therein, paying to the Mississippi and Tennessee Company one-third of the cost of construction. These several railroads were afterward leased or mortgaged, the details of which are not now material.

In July, 1889, the Louisville and Nashville Railroad Company was granted permission by the Taxing District of Shelby County to buy an interest in the line under said contract, and to use the name of the taxing district in any litigation necessary to secure the interest.

Thereupon, the Louisville and Nashville Railroad Company applied to the defendant companies, asking to be allowed to pay its *pro rata*, and have the joint use of said track, which was refused, and

this bill was thereupon filed to attain such interest and enforce said contract.

Both the Louisville and Nashville Railroad Company and the Taxing District of Shelby County are parties complainant to the bill, and the prayer is that the Louisville and Nashville Railroad Company be allowed to purchase an interest of one-fourth in said line upon the payment of its *pro rata* share, according to the terms of the contract, the amount to be fixed by the Court, upon proof, and that it have such rights and be subject to such conditions as are imposed by the contract upon the Mississippi and Tennessee Railroad Company.

The defendants demurred to the bill, on the ground that the Louisville and Nashville Railroad Company had not made sufficient tender and offer to be bound by the terms of the contract originally made with the city, whereupon complainants tendered an amended bill, meeting these objections, and asked to be allowed to file the same, but the Chancellor declined to allow it to be filed, and overruled the demurrer, on the ground that the original bill was sufficient to meet all the objections raised.

It appears that a small part, perhaps one-seventh, of the right of way for the railroad line is over private property, bought or condemned by the Mississippi and Tennessee Railroad, for track purposes, and the remainder is over the streets and other public property of the taxing district.

Various defenses were made by demurrer and answers, and much proof was taken, and, on final hearing, the Chancellor granted the relief prayed for, and ordered a reference to ascertain the amount that should be paid by the Louisville and Nashville Railroad Company, pending which the defendants prayed an appeal to this Court, and have assigned separate errors, raising many objections, which will be noticed so far as necessary to a disposition of the case.

It is insisted that for thirty years the Louisville and Nashville Railroad Company has operated a line of road running into the city of Memphis before this belt or connecting line was built, and that it has waited nine years after the line was completed before claiming any rights; that in the meantime two other roads have come into the joint ownership of the line under the contract, and that the reservation in the contract in favor of other lines has thus been exhausted, and the Louisville and Nashville Railroad Company cut off by its own laches and prior occupation; and that the line is already burdened with as much traffic as it can accommodate, and that the admission of another road would be burdensome, and impair the efficiency and use of the line for purposes of travel and traffic.

It will be noted that the contract between the taxing district and the Mississippi and Tennessee Railroad Company places no limit on the time when other roads may come in under the contract,

nor the number of roads that may come in, and we can see no ground for excluding the Louisville and Nashville Railroad Company, unless, as a matter of fact, its admission will overburden the line, if, indeed, that would furnish a sufficient reason. This is a question of fact, and on it much proof has been taken, and the Chancellor was of opinion from this proof that defendant's contention on this point was not sustained, and we are of opinion that he is clearly sustained by the weight of the reliable proof introduced.

Nor or we able to see how the defendant companies are in any way injured or prejudiced by the delay of the Louisville and Nashville Railroad Company to come in under the contract, as they have been in possession and occupancy of the line and enjoying its benefits in the meantime.

It further appears that the cars of the Louisville and Nashville Railroad Company are now passing over the line, and paying toll therefor to the defendant companies. It is also made to appear that the capacity of the line could be largely increased, if the operation of the same was under one management, controlled by the several parties interested, instead of being operated by each company independently of the others.

It was evidently the object of the contract, so far as the taxing district is concerned, to furnish a convenient means of passage through the city over a line connecting the main lines of railroad north and south, thus making a matter of benefit

and convenience to both the city and the railroad companies, and the city has the right to enforce the contract in such manner as to make the greatest convenience, and reap the greatest results to the public, there being no valid objection in the way. *Joy* v. *St. Louis*, 138 U. S., 1 to 50.

It is insisted, however, that the Courts cannot properly enforce the contract, because it would involve a continuing oversight, and the enforcement of personal services and continuing duties, which the Courts will not undertake.

We can see no valid reason why several owners may not operate and own the same line of road, each having an undivided interest therein, in the same way that any other easement or property might be owned and operated by several persons. This, in fact, is now being done over this line by the three roads that have already acquired an interest therein. We can see no reason why several companies may not own in common this line of road, as well as they could a bridge or a union depot, or, as we often see, a common entrance or stairway to several buildings owned by different parties.

From the nature of this case, it is impracticable for the several roads each to have a separate line of road through the city, and the different companies, as well as the city and public generally, are interested in having a connecting line open, under proper regulations, to the use of all, and not to be monopolized by one to the injury

of others, and the detriment of the public. This was the controlling idea in the inception of the contract, and, even if the line should become over-burdened, it would not be ground to exclude any, but rather that each should be accommodated as far as practicable.

We do not think such a condition is presented under the facts in this case. Certainly the relative rights and obligations of the parties can be fixed by agreement of parties if practicable, and by the interposition of the Courts if necessary.

We are of opinion that the decree of the Chancellor is correct in directing the *pro rata* to be paid into Court by the Louisville and Nashville Railroad Company instead of being paid direct to the Mississippi and Tennessee Company.

Two other companies have acquired an interest in the property since it was built, and mortgages have been executed covering this line, and it is eminently proper that the fund be paid into Court and paid out to the several parties entitled, as the proof may show their rights therein. It is also altogether proper that the Louisville and Nashville Railroad Company, on entering into the joint ownership of the track, should pay one-fourth of the operating expenses so long as the four roads are interested therein. If other roads should here-after be admitted under the contract, it would be necessary that the *pro rata* of expenses be re-adjusted to meet the changed condition of owner-ship.

44—8 p

We cannot accede to the proposition that the property and its management should remain in the original builder, the Mississippi and Tennessee Railroad Company, and that other companies should come in subordinate thereto. This is evidently not the arrangement originally contemplated by the contract, nor would it be best for the interest of the city or the public, but there is nothing to prevent one general management by the several roads under their joint supervision.

It is no bar to the relief sought that a portion of the right of way of the line is over private grounds, which have been purchased or condemned by the Mississippi and Tennessee Company. If there were any thing in it as an original proposition, it cannot now be set up in face of the agreement made with the taxing district to allow other roads to enter upon the line. It was in consideration of this agreement that the right of way was granted by the city over its streets and other public property, and defendants are estopped to exclude others by the very terms of the contract.

Again, it is insisted that the Louisville and Nashville Railroad Company is a foreign corporation; that it only has a terminus in Memphis by virtue of its control of the Memphis and Ohio Railroad, and that it can only operate its line under the provisions of the charter of the latter-named company, afterwards called the Nashville and Memphis Railroad Company, which provides that a

line may be operated west of Bayou Gayoso only by animal power, and not by steam. The argument is, that if the Louisville and Nashville Railroad Company is let into the joint ownership of this line, it can only operate it by animal power, and not by steam, and this would not only be impracticable, but would prejudice defendants in their use of the line if it were practicable.

In considering this question, it is well to note that the Louisville and Nashville Railroad Company is now running its cars over this line propelled by steam, not only by sufferance of the defendant companies, but under contract with them, paying a fixed tax or rental therefor, and the city is not only not complaining, but is joining in this action to enable the complainant railroad to more satisfactorily operate the same by steam.

We think this right to operate a line west of Bayou Gayoso by the Louisville and Nashville Railroad Company, as the successor of the Nashville and Memphis and Memphis and Ohio Roads, is no longer an open question.

By the Acts of 1851–2, Section 16, page 212, certain railroad companies (the Nashville and Memphis among them) were granted the right and given the authority to unite with each other, both as to their main stems and branches, and under this Act the Louisville and Nashville Railroad Company, operating the Memphis and Ohio or Nashville and Memphis Railroad, by consent of the city, could have constructed this or another line, connecting its

line with the Mississippi and Tennessee Railroad or any other line.

Again, by the Act of 1860, the Memphis and Ohio Railroad was permitted to condemn lands from its depot on Main Street to its depot in the navy yard.

By the Act of 1879, page 18, the regulation of this matter was placed under the control of the taxing district. See also *Railroad* v. *Bingham*, 3 Pickle, 527; Dillon on Municipal Corporations, Secs. 558–60; 2 Woods Railway Law, 740.

For years the Memphis and Ohio Railroad Company operated a line with steam power to the navy yard west of the bayou, and the city authorities, before this contract was entered into, had recognized and provided for its use by leasing to the railroad depot grounds west of the bayou, which carried with it, by necessary implication, the right of access to the same by the steam cars used by the road. But under this contract, and by the bringing of this suit, the taxing district expressly sanctions the use of steam power over the line, and we are at a loss to see how defendant companies can complain.

We are also at a loss to see any other reason why the Louisville and Nashville Railroad Company, if a foreign corporation, can be excluded from the benefits of this contract. Its terms are broad enough to embrace all railroads, whether operating under domestic or foreign charters, provided they have a terminus in the taxing district.

The Chancellor held that the question of the citizenship of the Louisville and Nashville Railroad Company could not be raised by defendants in this proceeding, and in this we think he was clearly correct.

The suit was brought before the passage of the Act of 1891, requiring foreign corporations to register their charters with the Secretary of State, and a memorandum of the same in counties where they propose to do business or wish to acquire property. Moreover, it does not appear that the Louisville and Nashville Railroad Company has not complied with that Act, if it be necessary, which we are not now called upon to decide.

Several exceptions were taken to the admission and rejection of testimony, and errors are assigned on this account. We find no reversible error in the action of the Court, and need not pass more definitely upon the exceptions made.

We are satisfied the decree of the Chancellor is correct, and affirm the same with costs, and the cause is remanded for further proceedings.