# Patton Township *v.* Monongahela Street Railway Company, Appellant.

*Equity—Specific performance—Street railways—Municipal consent—Paving—Construction of an additional track—Boroughs.*

A borough may maintain a bill in equity against a street railway company specifically to perform a contract by which in consideration of the borough's consent to the laying of a track on a street, the company agreed to repair the pavement of the street in a particular manner, and after the happening of a particular event to lay an additional track.

Argued Oct. 21, 1909. Appeal, No. 134, Oct. T., 1909, by defendant from decree of C. P. No. 2, Allegheny Co., Oct. T., 1907, No. 197, on bill in equity in case of Patton Township *v.* Monongahela Street Railway Company and Consolidated Traction Company. Before FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for specific performance of a contract.

MILLER, J., specially presiding, found the facts and conclusions of law to be as follows:

1. The township of Patton is one of the second class under the laws of the state of Pennsylvania.

2. The Pitcairn & Wilmerding Street Railway Company, duly incorporated under the laws of the state of Pennsylvania, is authorized to build and maintain a street railway on certain highways in said township; it with other companies was merged or consolidated into a corporation by the name of the Monongahela Street Railway Company on December 24, 1901, which company subsequently leased all its rights and privileges for a term of 900 years to the Consolidated Traction Company, duly incorporated for the same purpose, which lease included the franchises granted to the Pitcairn & Wilmerding Street Railway Company next referred to.

3. By written agreement dated August 19, 1901, between the supervisors of Patton township and the aforesaid Pitcairn & Wilmerding Street Railway Company it was stipulated, inter alia, that the railway company might "also occupy that por-

tion of the Township road with single or double track, including the necessary turnouts and switches, beginning at the easterly line of the Borough of Pitcairn and continuing to the Township line at Westmoreland County and the stream known as Turtle Creek, or so much of either of said roads as may be necessary in the construction of said railway.

"Within one year after the establishment of the proposed Westinghouse foundry at Stewart Station said Company agrees to make that part of its line between the easterly line of the Borough of Pitcairn and the Westmoreland County line a double track."

The agreement also provided, "The road shall be paved with vitrified brick between the tracks, with planks placed on the outside of the rails and level up to tracks so as to permit of vehicles driving on or off the same with ease."

It also provided, "In constructing said roadway said company shall lay its tracks as near as may be to the grade of the present road, and where it is necessary that tracks shall be laid at a lower or higher grade the remainder of the road shall be either cut or filled to conform with the grade of the tracks at the cost and expense of the Street Railway Company."

It was also agreed, "That the said Street Railway Company shall at all times keep in good repair at its own expense said part of the public road occupied by its tracks and one foot on the outside of each rail thereof."

4. At and prior to the time of the execution of the foregoing agreement a large portion of the land in and about what is designated therein as Stewart station, at or near the boundary line between Allegheny and Westmoreland counties, was acquired by the East Pittsburg Improvement Company, and a portion thereof was laid out in lots under the name of Trafford City.

5. The defendant railway company constructed a single track on the public highway under and by virtue of the terms of said agreement between the eastern limits of the borough of Pitcairn and the western limit or boundary of said township or county line, in length slightly over a mile, with two sidings for the passage of cars. At present two cars, making thirty-

six trips each per day, averaging from four to six persons per trip, seem to be all that are in use for the purpose of accommodating the travel between said points.

However the roadway may have been graded, the space between the tracks paved and the space outside for the distance of one foot secured with planks, constituting a level grade enabling vehicles to easily draw on or off the said tracks, it is now apparent that the condition of the roadway has not been maintained; at present the top of the tracks at many places is not on a level with the grade of the road, nor for a foot on each side, so that teams can pass on and off with ease; the planks stipulated for in the contract, or ties which seem to have been substituted along the tracks on the outside, are not in place at many points; the railway ties upon which the tracks are fastened are at some places either decayed and rotten or have been withdrawn; the slope from the top of the rails to the roadway is abrupt; spaces between the tracks and ties are depressed by the sinking of the brick pavement, making travel upon the tracks difficult and rough.  At or about or since the filing of this bill certain repairs have been made between the tracks and roadway of defendant company, but it is apparent that neither the roadway nor the tracks are in the condition of repair stipulated for by the agreement, and it is further apparent that the condition of the highway along the track, owing not only to the lack of repairs but to the grade from the railway tracks to the edge of the highway, has resulted in making the public roadway less desirable for travel than before the railway tracks were placed thereon as maintained at present.

6.  In 1902 upon ten acres of land at or in what is now said Trafford City, the Westinghouse Foundry Company, having secured title therefor from the East Pittsburg Improvement or the Securities Investment Company, built a foundry plant. This consists of a main building about 600 feet long by 200 feet in width, and four other buildings of about the same length but different widths, in which five buildings are housed, the machinery and works of the foundry people, its power house and various other works and operations, constituting a part of said foundry plant.  Operations were begun in October,

1903; the number of employees has run from 200 to 600 men; the products turned out are complete castings, shipped from there by a private railway system to the other Westinghouse interests at Wilmerding, and other points in that vicinity. The town of Trafford City has about 1,500 population, with paved streets, stores and a bank; the number of houses is about 200.

7. It is estimated that the construction of an additional track between Trafford City and Pitcairn, including the improvements of the highway caused by the building of said additional track, is about $34,000. There is no evidence tending to show that there is a present demand for the additional track; nor is there any evidence tending to show that if the additional track were built and the public were better accommodated by reason thereof that increased traffic would not result. The defendant company's road now connects with, or has a traffic arrangement with, another street or passenger railway at Trafford City, extending eastwardly to Irwin and Greensburg in Westmoreland county, forming a complete line from these easterly points through and into the city of Pittsburg.

### CONCLUSIONS OF LAW.

1. In consideration of the grant of the use of the public highway from Pitcairn to what is now Trafford City by the supervisors of Patton township, to the defendant railways company, the latter agreed specifically as to the construction of the roadway, the character of pavement, the conditions outside of the rails, the grade of the road to be in conformity with the grade of the tracks so as to permit easy access to or from the same, and also within one year after the proposed Westinghouse foundry at Stewart station was erected to double-track said road.

The terms of the contract are clear and explicit. The defendant company obtained, and is now in possession of the right to the highway and of the highway itself; the plaintiff township of Patton is entitled to compliance with every stipulation contained in the contract; if there has been nonperformance or breach of contract in any part thereof equity has juris-

diction to decree the specific performance of the contract in all its details.

2. It clearly appearing that the brick pavement between the tracks is uneven and rough, sunken between the ties; that the additional foot on the outside of the tracks is not constructed as the contract provided for and is below the level of the top of the rails; that the grade of the tracks does not correspond with the grade of the road; that cross ties have decayed and disappeared; that the slope from the top of the rails to the outer edge of the road is far too steep, as a result of which defects, caused by the noncompliance with the provisions of the contract, vehicles cannot drive on or off the tracks with ease; the terms of the contract require, and the duty of the defendant company is to put its pavement, roadbed, track-level, the space outside and the grade outside of the tracks in the exact conditions specifically set forth by the contract on every part of said line within three months of the date of final decree.

3. The Westinghouse foundry, including all the buildings, tracks and operations conducted at Trafford City, with its finished daily product and number of employees, fulfills the condition as to the proposed foundry that the contract said should be established; this, coupled with the development and growth of the town of Trafford City as shown by its population, number of houses, both private and business, has fully met the reasonable proposition contemplated and provided for by the parties when the contract was executed. The existence of the foundry, its various buildings, operations, etc., are a fact which cannot be overcome by the theory that other and additional plans were in the contemplation of parties in no way connected with those who entered into the contract which is before us—conditions which at least the supervisors had no knowledge of and which were not in their minds when they executed this grant. Specific performance to the extent of requiring the defendant company to double-track its road from Pitcairn to Trafford City necessarily follows.

## DECREE.

And now, to wit, May 26, 1909, this cause came on to be

heard at this term, and was argued by counsel, and upon consideration thereof it is ordered, adjudged and decreed as follows:

1. That the said defendant companies shall within one year begin and complete the construction of a second track between the easterly borough line of Pitcairn and Trafford City, formerly Stewart station, in the manner provided for in the contract.

2. That within three months after final decree the defendants shall repair the pavement, roadbed and one foot on the outside of each rail, on that part of the public road now occupied by its track between the easterly borough line of Pitcairn and the Westmoreland county line, in the manner specifically provided for in the contract.

3. That the defendants pay the costs of this case.

*Error assigned* was decree of the court, quoting it.

*Samuel McClay,* of *Reed, Smith, Shaw & Beal,* for appellant.

*W. H. S. Thomson,* with him *Frank Thomson* and *S. M. Myers,* for appellee.

PER CURIAM, January 3, 1910:
The decree is affirmed on the findings of fact and law by Judge MILLER, specially presiding.