NEW RIVER LUMBER Co. *v.* TENNESSEE RY. Co., *et al.*
TENNESSEE RY. Co. *v.* STANDARD TRUST Co., *et al.*

### (*Knoxville.* September Term, 1916.)

1. **MORTGAGES. Priority. Notice contained in the mortgage.**

   Where a timber company contracted with a railroad which agreed
   to extend its line to tap timber lands and agreed if it placed
   a mortgage on the railway property to insert a clause, which
   it did insert, reading, "subject to, and this indenture is executed
   with notice of the prior rights of the other parties" in the ex-
   tension contract, such stipulation in the mortgage affected not
   only the trust company which held the mortgage, but every
   holder of bonds secured by the mortgage. (*Post, pp.* 676, 677.)

2. **SPECIFIC performance. Discretion of court.**

   Specific performance of a contract is a discretionary remedy re-
   quiring a legal and not arbitrary discretion, and is given as
   a substitute for a legal remedy of compensation whenever the
   legal remedy is inadequate or impracticable. (*Post, pp.* 677, 678.)

   Cases cited and approved:   Howard v. Moore, 36 Tenn., 321;
   Blair v. Snodgrass, 33 Tenn., 1.

3. **SPECIFIC PERFORMANCE. Contracts enforceable. Contin-
   uous contracts.**

   Courts of equity do not hesitate to specifically perform contracts
   for construction and operation of railroads merely because they
   are continuous and require skill in execution. (*Post, pp.* 678—
   681.)

   Cases cited and approved:   McCann v. Nashville R. R. Co., 2 Tenn.
   Ch., 773;  Starnes v. Newsom, 1 Tenn. Ch., 239;  T. P. Ry. Co.
   v. Marshall, 136 U. S., 393;  Rutland Marble Co. v. Ripley, 10
   Wall, 339;  U. P. Ry. Co. v. Chicago, etc., Ry. Co., 163 U. S.,
   564;  Joy v. St. Louis, 138 U. S., 1;  Grand Trunk Western Ry.
   Co. v. Chicago, etc., R. Co., 141 Fed., 785;  Schmidtz v. Louis-
   ville R. Co., 101 Ky., 441;  Prospect Park, etc., R. Co. v. Coney

New River Lumber Co. v. Tennessee Ry. Co.

Island, etc., R. Co., 144 N. Y., 152; Cumberland Valley R. Co. v. Gettysburg, etc., R. Co., 177 Pa., 519; Southern R. Co. v. Franklin, etc., R. Co., 96 Va. 693; Louisville & N. R. Co. v. Miss., etc., R. Co., 92 Tenn., 681; Joy v. St. Louis, 138 U. S., 1.

4. **SPECIFIC PERFORMANCE. Contracts enforcable. Sufficiency of consideration.**

A contract by which a railroad agreed to extend its lines to tap timber lands, covering a period of twenty-seven years, is enforceable in equity, though the railroad bondholders could not receive full compensation by collection of freight rates until expiration of twenty-seven years. (*Post, pp, 681—683.*)

Cases cited and approved: Rushbrooke v. O'Sullivan, 1 Ir. R., 323; Ward v. Newbold, 115 Md., 689; Patton v. Monongahela St. R. Co., 226 Pa., 372; Williams v. Lowe, 79 N. J. Eq., 173; Cock v. Evans, 17 Tenn., 287; Hall v. Ross, 4 Tenn., 202; Howard v. Moore, 36 Tenn., 321; Hudson v. King, 49 Tenn., 560; McCarty v. Kyle, 44 Tenn., 349; Morrison v. Searight, 63 Tenn., 478; Baker v. Shy, 56 Tenn., 89.

5. **RECEIVERS. Receiver's certificates. Sale below par. Discretion of court.**

The matter of issuance of receiver's certificates and their sale below par is so largely in the discretion of the chancellor that only in a gross abuse of his discretion will his action be revised. (*Post, p.* 683.)

6. **APPEAL AND ERROR. Receiver's certificates. Right to object to issuance.**

A trust company holding a railroad mortgage, but failing to object to an order for issuance of receiver's certificates at the time it was made or at the time when its answer in the proceeding was filed, or merely excepting to interlocutory orders authorizing issuance, but not following up such exception by application for writs of *supersedeas*, cannot on appeal object to the issuance. (*Post, pp.* 683, 684.)

7. **USURY. Receiver's certificates. Sale below par.**

Since issuing receiver's certificates is a mere incidental measure to accomplishing the purpose of the receivership, authorizing

New River Lumber Co. v. Tennessee Ry. Co.

sale of such certificates to the best advantage, though below par, is not usury, especially if they were not sold for less than they would bring on the open market. (*Post, pp.* 684, 685.)

8. **EVIDENCE. Admissions. Conclusiveness as againt codefendants.**

In an action by a timber company for specifiic performance of a contract with a railroad to extend its lines to tap timber lands, wherein the railway company admitted every allegation in the bill, but a trust company holding a mortgage on the railroad which was subject to the rights under the contract was a foreign corporation and was proceeded against as a nonresident, the decree against it was based upon sufficient proof by reason of the railway's admissions. (*Post, p.* 685.)

9. **CORPORATIONS. Nonresident defendants. Appearance.**

There is no point in the insistence that a mortgagee of a railroad was denied the right to defend as a nonresident, where it did come in and answer, and its counsel was present on the examination of witnesses, and cross-examined witnesses, and made a full and complete defense to the bills, and procured a decree under its cross-bill. (*Post, pp.* 685, 686.)

FROM SCOTT.

Appeal from the Chancery Court of Scott County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.— HUGH G. KYLE, Chancellor.

GEO. S. BAILEY and WRIGHT & JONES, for New River Lumber Co.

HORACE M. CARR, for Tennessee Ry. Co. and others.

JOUROLMON & WELCKER, for Standard Trust Co. and others.

FOWLER & FOWLER, for holders of certificates.

MR. JUSTICE LANSDEN delivered the opinion of the Court.

The original bill in this case was filed to secure the specific performance of a contract entered into by the lumber company and the railway company to have certain extensions of the line of the railway company made into the timber lands of the lumber company. The trust company is the holder, as trustee, of a mortgage, to secure certain bonds issued by the railway company, and is resisting the specific performance of the contract. The chancellor decreed a specific performance, and his decree has been enforced. An appeal was taken by the trust company to the court of civil appeals, in which the decree of the chancellor was affirmed. The case is before us upon the petition of the trust company for writs of *certiorari*, and has been argued at the bar. A brief history of the litigation is necessary to be stated.

The original bill was filed July 1, 1913, and charged that the complainant New River Lumber Company of Ohio, as successor in title to a corporation of the same name organized under the laws of West Virginia, is the owner of timber rights to about 600,000,000 feet of timber standing upon lands adjacent and tributary to the lines of the railway company, and that on the 1st day of June, 1905, the contract which is made the basis of the bill was entered into between the railway and complainant's predecessor in interest. It is charged that at that time the railway company was

the owner of a line of road extending about eleven miles in a southern direction from Oneida, Tenn., at which point it forms a junction with the Cincinnati, New Orleans & Texas Pacific Railway; that it was necessary to have an extension of this line of road into the timber lands of the complainant's predecessor at some future time before it could deliver its lumber, which it desired to manufacture, to the Cincinnati, New Orleans & Texas Pacific Railway, and from thence on to the general markets. The complainant's predecessor contemplated the expenditure of many hundreds of thousands of dollars in mills, machinery, and the like, constituting an organization for the cutting, sawing, and marketing of the timber which it owned; that the defendant railway company was substantially a timber line and was deriving about seventy per cent. of its gross revenues from the business of the complainant. In this situation the complainant's predecessor and the defendant railway company, and the Cincinnati, New Orleans & Texas Pacific Railway entered into a contract which was to remain in force for twenty-seven years from its date, by which the railway company agreed with the lumber company, its successors and assigns, that it would complete its line of railroad to the mouth of Paint Rock creek and up New river through the timber lands which the complainant's predecessor was about to purchase, a distance of about thirty-two miles; and it also agreed to build certain lateral or branch lines which are set out in detail in the contract. It was

agreed that the various lines of railroad should be completed about the 1st of January, 1909; that the lateral branches might be increased or decreased up the various creeks by agreement between the parties; that the lumber company would not require the railway company to build any of the specified lines where the engineering difficulties made the extensions unreasonable; that the New River Coal & Coke Company, from which complainant's predecessor was about to purchase the timber interests referred to, was owner by the same interests that owned the defendant railway company. It was stipulated in the contract that if the railway company should afterwards place a martgage upon its property, it would insert a clause in the mortgage as follows:

"Subject, however, to, and this indenture is executed with notice of, the prior rights of the parties other than the Tennessee Company to a certain agreement between Tennessee Railway Company, the Cincinnati, New Orleans & Texas Pacific Railway Company, and New River Lumber Company, dated June 1, 1905, a copy of which is filed with the trustee herein named contemporaneously with the execution of this indenture; it being the intention of the Tennessee Company to bind its property in said agreement described and any and all purchasers thereof by a lien hereby created, for the protection and security of this agreement and all the parties thereto other than the Tennessee Company, which lien shall be and hereby is declared to be prior

and superior to the lien of this indenture or mortgage."

The complainant acquired all of the timber lands, together with all the rights accruing under the contract of June 1, 1905, on March 28, 1908, and afterwards it constructed a large sawmill equipped with all modern appliances for the manufacture of timber which had about a capacity of 20,000,000 feet per annum. This mill and the organization incident thereto have been in operation upon the premises adjacent to defendant's line of road, manufacturing and shipping lumber into the general markets from that date until the bill was filed. It had expended in this connection about $2,000,000.

The railway company completed its main line to Paint Rock creek, and thence up New river a short distance above the junction of Beech Fork creek with New river, but it is charged that this construction was not done within the time provided for in the contract.

The remainder of the main line, as well as the branch lines provided for in the contract, have not been built, and the railway company was, at the time of the filing of the bill, insolvent and unable to comply with its contract. It was charged that the construction of the whole of the railroad lines provided for by the contract was necessary to enable the complainant to procure the timber from its lands and to enable it to utilize and get the benefit of its plant and property, that it had no other means of transporting the prod-

ucts of the mills than over the lines of the railway company, and that this was known and fully understood by the parties to the contract at the time it was executed. It was charged that it had cut and removed the timber from its lands to such a point that unless the main line of the road, up to a point known as Charley's branch and a lateral of about four miles up Cage's creek, were completed during the present season for railway construction, it would be necessary for the complainant to shut down its enterprise, and this would cause it irreparable injury. It is charged that a stoppage of the mill for a considerable period of time would not only result in the loss of the profits of complainant's business, but of its trade and customers, and the disintegration of its organization for operating its mill.

It is further charged that the cost of constructing the line up to Charley's branch and about four miles up Cage's creek would be about $65,000, and that this construction would temporarily enable complainant to continue its business; that the railway company is insolvent and without money or credit to build the road as provided by the contract, but that it was willing to comply with the contract so far as it was able to do so.

On March 1, 1907, the railway company executed to the Standard Trust Company a mortgage covering all of its line of road then built, and all of its other property tangible or intangible, both present and after acquired, to secure a bond issue of not exceeding

New River Lumber Co. v. Tennessee Ry. Co.

$4,500,000, five per cent., thirty-year gold bonds, and that of this issue about $1,129,000 had been subscribed by divers and sundry parties, and were outstanding.  It is said in the bill that by virtue of this bond issue the railway company became insolvent, and if its property was freed from the mortgage it would be dissipated and dismembered by executions, thereby destroying complainant's only means of transport to market.  It is also shown that the railway company had been unable to procure the consent of its bondholders to make the extensions provided for in the contract.  The bondholders refused to make any agreement which would permit the issuance of securities upon the railroad ahead of their bonds to be used in the extensions agreed upon.  It is further charged that complainant has no other adequate or proper remedy than the specific performance of the contract for the extension of the lines of road, and that the damages which it would sustain are not determinable by any proper measure known to the law; that its timber rights on the lands referred to would expire in the year 1930, and such timber as was not removed by then would be lost to complainant entirely.

On the same day that the bill was filed the railway company filed its answer, and admitted all of the material allegations of the bill and expressed its willingness to perform the contract referred to, but averring its financial inability to do so.  The trust company was proceeded against as a non-resident

of Tennessee.   There was no attachment of property belonging to this defendant.   The bill and answer were presented to the chancellor, who authorized the filing of the bill and appointed Byrd M. Robinson receiver with full authority to take charge of the railway company, and to take steps looking to the performance of the contract, and authorizing him to this end to issue receiver's certificates against the property of the railway company not to exceed $65,000, running two years and bearing six per cent. interest.   The receiver qualified and proceeded to the execution of the order just referred to.

At the same time that the original bill and answer of the railway company thereto were filed, the railway company filed its original bill in the same court against the Standard Trust Company and certain other of its creditors.   This bill recites the presentation of the bill of the lumber company and its answer thereto, as well as its default in the performance of the contract of June 1, 1905, and averred that the filing of the bill of the lumber company would make it impossible for it to continue to carry on its business as an operating concern.   It recites the refusal of some ten per cent. of its bondholders to assent to its doing the construction work provided for in the contract aforesaid, and set up what assets it owned, aside from the railroad, and certain debts which it owed, and prayed the court to administer its affairs in connection with the receivership granted under the bill of the lumber company.   On August 12,

1913, a judgment for confessed was taken against the Standard Trust Company in the case of the lumber company against the railway company, based upon publication. Upon this order *pro confesso,* the bill and exhibits thereto, and the answer, the court decreed the specific performance of the contract; that the railway company has been and still is financially unable to perform it; that the obligations of the contract, including the cost of the building of the extensions prayed for, are a lien upon the property of the railway company superior and prior to the mortgage lien of the trust company. The receiver was ordered to construct the extensions of the line of railroad according to the provisions of the contract as heretofore set out. To enable him to do this, the receiver was authorized to continue to issue receiver's certificates up to the sum of $65,000, which were to constitute a first lien on the property of the railway company. The decree reserved the rights of the parties as to an extension of the branch up Cage's creek further than two and one-half miles which had previously been authorized.

Later the two cases were consolidated, and the bill of the railway company was sustained as a general creditor's bill. The previous appointment of Robinson, receiver, was made permanent, his salary was fixed, and he was authorized to employ counsel.

The trust company prayed an appeal from the foregoing orders as they were made, which appeals were denied by the chancellor upon the ground that the

decrees appealed from were interlocutory and not appealable.

On April 1, 1914, the Guaranty Trust Company, which appears to be the successor of the Standard Trust Company, asked leave of the court to be permitted to file an answer to the original bill of the New River Lumber Company, which was allowed, and the answer afterwards filed. On April 6, 1914, the Guaranty Trust Company filed its cross-bill in the consolidated cases for the purpose of foreclosing the mortgage which it held as successor of the Standard Trust Company to secure the bonds previously referred to. It made allegations usual to such bills, and in addition set up the receivership of the railway company and the bill of the lumber company, and contested the claimed priority of the lumber company over its mortgage. This cross-bill alleged that the bonds issued under the mortgage of the cross-complainant were superior in right and interest to the receiver's certificates which had been issued in the extention of the railroad and the construction of its lateral branches. In the eighteenth paragraph it alleged as follows:

"Your cross-complainant is informed and believes that the New River Lumber Company claims to have some interest in or claim or lien upon the property described in said mortgage or deed of trust, of which foreclosure is sought in this action, which said claim is based upon a certain contract dated June 1, 1905,

set forth in the bill of complaint of said New River Lumber Company heretofore filed herein.

"Your cross-complainant further shows that pursuant to an order of court dated 1913, receiver's certificates have been issued to the amount of $65,000, which are a lien upon the property described in the said mortgage, prior to the rights of your cross-complainant under the said mortgage; that the proceeds of said receiver's certificates have been used to carry out and complete the terms and provisions of the said contract of June 1, 1905, and your cross-complainant is informed and believes and therefore alleges that the said New River Lumber Company no longer has any interest in or claim or lien upon the aforesaid property, which is superior to the interest of your cross-complainant, but that said interest, claim or lien or the said New River Lumber Company is subsequent, inferior and junior to the right, title and interest of your cross-complainant herein under the mortgage or deed of trust hereinbefore referred to."

On the same day the Guaranty Trust Company filed an answer to the bill of the railway company, in which it averred that it was the successor in right in the mortgage referred to, to the Standard Trust Company, and that $1,229,000 of the bonds were outstanding. Later, on May 31, 1914, the Guaranty Trust Company answered the original bill of the lumber company in the room and stead of the Standard Trust Company, which was named as a defendant therein. In this answer the following is found:

136 Tenn.—43

"The defendant admits that on or about the 1st day of June, 1905, a certain contract in writing was entered into between the Tennessee Railway Company, therein called the Tennessee Company, New River Lumber Company, therein called the Lumber Company, and the Cincinnati, New Orleans & Texas Pacific Railway Company therein called the Cincinnati Company, and begs leave to refer to the original of said contract for a specific statement of its terms and conditions. As to each and all of the other allegations contained in the bill of complaint, defendant alleges that it has not sufficient information upon which to form a belief as to the trust thereof, and that therefore it denies the same."

Such orders have been made by the chancellor as that the railroad line and the lateral branches referred to in the contract of June 1, 1905, have been constructed by the issuance of receiver's certificates which were made a lien upon the property of the railway company superior to that claimed by its bondholders.

An order of reference has been made in the general creditor's case to ascertain the amount of the assets of the railway company, the names of its preferred creditors, and the amounts due each, the particular asset on which each has a lien, and the names of its general creditors and the amounts due each.

The receiver has issued certificates of $300,000 par value in the construction of the road and for the rebuilding of part of the road. In the progress of

the case below, it was shown by a report of the receiver that he had been able to sell only $78,000 of the receiver's certificates, and the chancellor thereupon, over the exception of the trust company, ordered the receiver to sell $39,000 of the certificates to the best advantage, and to let the work of building the road to a contractor to be paid for in certificates. This was done, and eleven miles of the road was let to a contractor for the sum of $183,000, payable in receiver's certificates. The trust company excepted to the action of the chancellor in awarding this contract, and also in authorizing a sale of $39,000 of certificates at ninety-six cents on the dollar, on the ground that the transaction was usurious. The chancellor also authorized the receiver to borrow $25,000 on receiver's certificates at not less than two-thirds of their par value. The chancellor ordered all the property included in the mortgage sold to pay the bonds secured thereby, but held that the sale would be suspended until the completion of the extensions of the railroad theretofore ordered, and that the bonds secured by the mortgage were inferior in right to the receiver's certificates issued in aid of the order for the specific performance of the contract.

It should be observed, before determining the rights of the parties under the contract, that the proof establishes that seventy per cent. of the gross income of the railway company was received, either directly or indirectly, from the lumber company, and an examination of the contract of June 1, 1905, is convinc-

ing that the chief purpose for the construction of the defendant railroad was to haul the timber upon the lands now owned by the complainant. The complainant, on the faith of the contract to extend the road and after it had become the owner of the contract, invested more than $2,000,000 in a plant on the line of the railway company and in stumpage rights in the timber to be cut and removed by it by the first of the year, 1930. It is obvious, therefore, that if the line of road belonging to defendant is not extended, as provided for in the contract, the complainant, having no other means of transport, will suffer irreparable loss.

We think the stipulation inserted in the mortgage and which was provided in the contract should be so inserted, to the effect that the mortgage was executed subject to and with notice of the prior rights of the complainant in the contract sought to be specifically enforced, affected not only the trust company, but every holder of bonds secured by the mortgage in which it is trustee. Whether this covenant to extend the line of railway is such as would run with the land or not, the provisions in the contract and in the mortgage, operate as notice of the rights of the complainant. The trust company itself so understood the matter at the time because in its cross-bill, filed in these cases, it is said that the complainant lumber company claims to have some interest in or claim or lien upon the property described in the mortgage which it was seeking to foreclose, and that receiver's

certificates had been issued to the amount of $65,000, and were a lien upon the property included in the mortgage prior to the rights of the trustee. So we conclude that the complainant had the right under the contract to have the road extended so as to furnish proper transportation for the timber on the lands involved because it was so stipulated in the contract, and the trust company, having notice of the conditions of the contract, must be deemed to have agreed precisely as did the lumber company and the railway company. That the complainant acquired such right is not seriously disputed. The question made is that a court of chancery will not and should not enforce a contract of the nature of the one sued upon. It is not claimed that the complainant has an adequate remedy at law. The result of the insistence would be that complainant is without remedy.

The remedy of specific performance of a contract is a discretionary one. By this is not meant that the judges can exercise arbitrary discretion in refusing the relief or granting it. It is a legal discretion, and is firmly established in our jurisprudence. It is necessary, when parties refuse to perform and wher adequate remedy at law does not exist, to the fulfillment and completion of the contract of the parties. It is given as a substitute for the legal remedy of compensation whenever the legal remedy is inadequate or impracticable. *Howard* v. *Moore,* 4 Sneed, 321; Pomeroy, Eq. Juris. vol. 4, section 1400; Elliott on Contracts, vol. 2, section 2275; A. &

New River Lumber Co. v. Tennessee Ry. Co.

E. Enc. of L. (2d Ed.), vol. 26, p. 14; *Blair* v. *Snodgrass,* 1 Sneed 1.

It has been held in many of the earlier cases that courts of equity will not specifically perform contracts which are continuous in their nature and require skill in their execution. *McCann* v. *Nashville R. R. Co.,* 2 Tenn. Ch., 773; *Starnes* v. *Newsom,* 1 Tenn. Ch., 239; *T. P. Ry. Co.* v. *Marshall,* 136 U. S., 393, 10 Sup. Ct., 846, 34 L. Ed., 385; *Rutland Marble Co.* v. *Ripley,* 10 Wall., 339, 19 L. Ed., 955, and authorities there cited. But there was a wide departure from this rule in what the author of Cyc. vol. 36, p. 587, denominates "a remarkable series of cases beginning with the year 1890." An examination of the following cases will demonstrate that courts of equity do not, at this day, hesitate to specifically perform contracts for the construction and operation of railroads merely because such contracts are continuous in their obligations and require skill in their execution: *U. P. Ry. Co.* v. *Chicago, etc., Ry. Co.,* 163 U. S., 564, 16 Sup. Ct., 1173, 41 L. Ed., 265; *Joy* v. *St. Louis,* 138 U. S., 11 Sup. Ct., 243, 34 L. Ed., 843; *Grand Trunk Western Ry. Co.* v. *Chicago, etc., R. Co.,* 141 Fed., 785, 73 C. C. A., 43; *Schmidtz* v. *Louisville R. Co.,* 101 Ky., 441, 41 S. W., 1015, 38 L. R. A., 809, which was a contract to operate a railroad for a term of thirty years for the benefit of mortgage bondholders; *Prospect Park, etc., R. Co.* v. *Coney Island, etc., R. Co.,* 144 N. Y., 152, 39 N. E., 17, 26 L. R. A., 610; *Cumberland Valley R. Co.* v. *Gettys-*

*burg, etc., R. Co.,* 177 Pa., 519, 35 Atl., 952; *Southern R. Co.* v. *Franklin, etc., R. Co.,* 96 Va., 693, 32 S. E., 485, 44 L. R. A., 297; *Louisville & N. R. Co.* v. *Miss., etc., R. Co.,* 92 Tenn., 681, 22 S. W., 920.

In our own case of *L. & N. R. R. Co.* v. *M. K. & T. R. R. Co.,* this court specifically performed a contract between the city of Memphis and the Mississippi & Tennessee Railroad Company, by which the railroad company agreed to permit any other railroad terminating in the city to use the tracks which it built in and upon the streets of the city in consideration of the right to do so. It approved a decree which allowed complainant railway company to use tracks of the defendant railroad company "upon payment of a *pro rata* share, not exceeding the cost of construction of said tracks, bridges, depot houses, and other expenses," so long as the original road and two other lines which had previously entered upon the use of the tracks shall continue to use them. The court cited and approved *Joy* v. *St. Louis,* 138 U. S., 1, 11 Sup. Ct., 243, 34 L. Ed., 843, supra.

In the case last cited from the supreme court of the United States, that court reviews and distinguishes the cases cited by the trust company from that court, and if they were ever authority for the proposition that courts of equity will not specifically perform contracts for the construction of railroads, they are overcome by the later cases. Many authorities are cited in the opinions just referred to and we will not recopy them here. What the courts once deemed

to be an insuperable barrier to a decree for the specific performance of such a contract is now considered no objection. The question has always been in the sound discretion of the court. If the ends of justice cannot be otherwise attained, the court will decree specific performance unless the details of the decree will impair the usefulness of the court, and obstruct it in the performance of its ordinary duties. Such a reason, however, in the very nature of things, must be addressed to the discretion of the court passing the decree. In the case under consideration, the decree for specific performance has been executed, and the railroad has been built, and the question now is whether those who have constructed the road under the orders of the court shall be paid for it. To grant the defendant's contention that the court should not have specifically performed the contract would, of course, be depriving those who have constructed the road of compensation therefor, and the bondholders, having a mortgage upon the property of the railway company, both present and after-acquired, would reap the benefits arising from the extension of the line into the property of complainant, and would thereby be given security for the payment of their bonds upon property which was brought into existence over their protest. They would be given priority over a right of which they had notice and to which they expressly agreed. It is not insisted that the contract is unjust or was procured by fraud or other unfair means. The only objection upon this view is

New River Lumber Co. v. Tennessee Ry. Co.

that the contract, because of its inherent nature to construct a railroad, is not enforceable in a court of equity. ·

It is insisted also that the obligations of the contract and the remedy sought are not mutual. It is said, in support of this insistence, that the bondholders of the railway company cannot get the consideration for its performance until the end of twenty-seven years, the length of time which the contract has to run, and that there are many things which may occur in so long a period of time which would prevent the railway company from getting the consideration. There is nothing in the contract, or in the situation of the parties, which would prevent the court from compelling a performance on the part of complainant. While it is true that complainant is a nonresident of Tennessee, it is also true that it has complied with the laws of this State respecting the admission of foreign corporations, and has its property in this State subject to the jurisdiction of the court. The mere fact that the railway company is to receive its freights running over a period of twenty-seven years, as we have seen from the cases last cited, is not in the way of a specific performance because railroads do not customarily receive fares except as they earn them, and it is to the railway's advantage that its earning power be prolonged. It is the only manner in which contracts such as this can be enforced. We recognize the well-established rule requiring mutuality of obligation and remedy, but the

point of our decision is that the length of time which the contract has to run is not a barrier to a specific performance.

The case of *Rushbrooke* v. *O'Sullivan,* 1 Ir. R., 323, is not in conflict with this holding. That case recognizes as an exception to the rule that a court of equity will not enforce specific performances of a building contract, that if a "contract is defined by the contract," and the complainant has a substantial interest in having the contract performed, which is of such nature that he cannot be adequately compensated for the breach by damages, it will be specifically performed. *Ward* v. *Newbold,* 115 Md., 689, 81 Atl., 793, Ann. Cas., 1913A, 919, and the notes. In the note to the cited case, the opinion of the English court is set out and is considered by the annotator as a leading case from that court.

All of the cases, if they do not announce, aptly illustrate the rule that at last the remedy of specific performance is within the sound discretion of the court. In *Patton* v. *Monongahela St. R. Co.,* 226 Pa., 372, 75 Atl., 589, a street railroad company was required to repair the pavement of a street and to lay an additional track where it had agreed to do so with the city, and had taken possession of the street. In *Williams* v. *Lowe,* 79 N. J. Eq., 173, 81 Atl., 760, it was held that while the general rule is that a court of equity will not specifically enforce a construction contract, such rule does not prevent it from so doing as incidental to other relief in an exceptional case.

*Cock* v. *Evans*, 9 Yerg., 287; *Hall* v. *Ross*, 3 Hayw., 202; *Howard* v. *Moore*, 4 Sneed, 321; *Hudson* v. *King*, 2 Heisk., 560; *McCarty* v. *Kyle*, 4 Cold., 349; *Morrison* v. *Searight*, 4 Baxt., 478; *Baker* v. *Shy*, 9 Heisk., 89.

It appears that the chancellor authorized the issuance of receiver's certificates and their sale in some instances below par. This is assigned as error. Such matters are largely in the discretion of the chancellor, and only in a gross abuse of his discretion would we undertake to revise his action.

In addition, the trust company is not in a position to call in question the practices of the court with respect to the receiver's certificates. In its answer it did not object to the certificates that had been issued at the time the answer was filed, but, on the contrary, recognized them as valid and subsisting. It is true that it excepted to the interlocutory orders authorizing the issuance of certificates, but such objection as was made was not followed up by an application for writs of *supersedeas*. In the nature of things, one objecting to the issuance of receiver's certificates must act promptly. They cannot permit the court to issue them and others to purchase them upon the faith of the court's order and wait until the property is brought into existence and money expended upon the faith of them before testing in the appellate court the right to issue them. The trust company merely excepted to the interlocutory orders as they were made. It did not file any pleading or make any appli-

cation to this court to have the action of the chancellor corrected. It now claims that the chancellor violated the laws respecting usury, and for other reasons, those buying the certificates, or constructing the road and accepting certificates in payment, are postponed to it. In other words, the property created under the orders of the court will be treated as after-acquired property and inure exclusively to its benefit. We think such a result would be inequitable. Before such consequences can be wrought, the trust company must have pursued its plain remedies to have the orders to which it excepted corrected *in limine*.

Authorizing the sale of receiver's certificates to the best advantage is not usury. It may be true that for reasons existing at the time, the certificates would not sell at par, but whether such sales should be made must rest in the sound discretion of the chancellor. It should be borne in mind that the court is not primarily issuing certificates and casting them upon the market, but its primary purpose is to specifically perform the contract. Issuing the certificates is a mere incident to the main purpose of the decree which could have been avoided doubtless by the acquiescence of the trust company in the rights of the lumber company, according to the terms of the mortgage. But however this may be, it is not claimed that the certificates were sold for less than they would bring upon the open market, or that the contracts for building the extensions of the road were let at an exorbitant price,

or that the construction of the line of road was improperly done. The narrow technical point is made that the sale of the certificates below par was an usurious transaction.

It is insisted for the trust company that inasmuch as it was proceeded against as a nonresident, that the decree at chambers predicated solely upon the original bill and exhibit, and the answer of the railway company was not based upon proof, and was void as to it. We think it was based upon proof because the answer of the railway company admitted every allegation in the bill. There it a suggestion on the brief that there was collusion between the lumber company and the railway company, but this suggestion has no basis in the evidence. They did make the contract of June 1, 1905, beyond dispute, and admittedly the railway company did violate it and fail and refuse to perform it. These are the only facts that were decreed by the chancellor at chambers; the balance of his decree being upon the construction of the contract. It is true that he had before him a copy of the contract, but it was a true copy as is shown by the production of the original, and as admitted by the trust company.

There is no point in the insistence for the trust company that they were denied the right to defend as nonresidents. It did come in and answer, its counsel was present at the examination of witnesses, cross-examined witnesses, and so far as we can see it made a full and complete defense to the bills. Un-

der its cross-bill it procured a decree of sale for the railroad, but subject to the prior lien of the receiver's certificates. As we understand the case, the question of priority turns upon the right of the complainant to have the contract specifically performed.

We have not had access to all of the authorities cited on brief of counsel for the trust company, but we have examined some of them, as well as the cases cited in this opinion. We have no doubt but what the justice of the situation has been met by the decree of the chancellor. We feel that a great injustice would be done the complainant to permit its operation to suffer for lack of proper transport of its logs when it built up its organization at a very large expense upon the faith of the agreement of the railway company, which was known by the trust company, to extend its road into the timber lands. The court seeks to administer practical justice, and is not concerned with a theory as such.

Affirmed.