LEON JOUROLMON, JR., v. FRANK L. WEST, et al.

Eastern Section.    July 9, 1932.

Petition for Certiorari denied by Supreme Court, October 22, 1932.

Hamilton S. Burnett and Leon Jourolmon, both of Knoxville, for appellant.

Jennings & Wright and Webb & Baker, all of Knoxville, for appellee.

OWEN, J. Leon Jourolmon, Jr., the complainant, and hereinafter designated as complainant, has appealed from a decree dismissing his bill.

The bill was filed against Frank L. West, receiver of the Holston Trust Company and against the Holston Trust Company for the purpose of determining the priority of liens on certain real estate owned by J. Basil Ramsey.

The complainant had made a loan to one Moss Yater. Yater had secured this loan to the complainant amounting to $8500 by a second mortgage on a house and grounds located in Knox County, and in a prominent residential section of the City of Knoxville, known as Sequoyah Hills.

It appears that Moss Yater, prior to executing his trust deed to secure the loan to complainant, had on September 1, 1927, executed a trust deed to the Defendant Holston Trust Company as trustee, the same property conveyed to secure complainant.

The trust deed to the Holston Trust Company was for the purpose of securing $10,500, evidenced by bonds serial Nos. 378 to 390, inclusive, Nos. 378 to 382, inclusive, being each in the amount of $500 and Nos. 383 to 390, inclusive, being each in the amount of $1000, all of which were of even date with said trust deed, September 1, 1927, and all of said bonds were payable to bearer. The five for $500 each were payable three years from date, the remaining of $8000 was payable five years from date. Said bonds bearing interest at the rate of six per cent. from date, payable semiannually at the Holston Trust Company, Knoxville, Tennessee, and provided for ten per cent. attorneys' fees, in the event said bonds were placed in the hands of an attorney for collection.

The trust deed also provided that in case of default of any bond or interest when due, that the holders of any of said bonds had the right to declare all of said bonds due and payable.

It appears that Moss Yater had purchased this property, on which he gave two trusts, from Mrs. Louise McClung, the widow of C. R. McClung. McClung was building a residence on said lot at the time of his death; his widow made a deed to Moss Yater. Yater completed the building contract and then executed the two trust deeds.

After executing the two trust deeds to secure the $10,500 in which the Holston Trust Company was Trustee and $8,500 to complainant by a second mortgage, Yater sold the property to the Dempster Construction Company, and on the same day the property was conveyed to the Dempster Construction Company, said Company conveyed the property to J. Basil Ramsey, who assumed Yater's indebtedness to complainant and to the Holston Trust Company, or the holders of the first mortgage bonds.

J. Basil Ramsey, at the time the property was conveyed to him, was president of the Holston Union National Bank, and the Holston Trust Company, an allied institution with said Bank; the Bank and the Trust Company occupying the same building, and the same board of directors conducting the business affairs of both institutions.

It appears that J. Basil Ramsey paid the complainant $2000 on his indebtedness of $8500. The complainant also had $2000 to mature January 1, 1930, and at Ramsey's request, the complainant extended the $2000 due January 1, 1930, for ninety days, and at the end of ninety days he extended the $2000 for ninety more days, and the extension of this $2000 was extended until January 4, 1931.

On November 12, 1930, the Holston Union National Bank failed, and sometime thereafter the Holston Trust Company was placed in the hands of a Receiver.

The bill in this cause was filed March 21, 1931. It appears that the five notes of $500 each, secured by the first trust, matured September 1, 1930. This $2500 was owned by C. H. Weiss of Cleveland, Tennessee. Weiss sent the notes to the defendant, Trust Company from whom he had purchased the notes or bonds of $2500, and on September 8, 1930, the Holston Trust Company re-purchased Weiss' notes and placed the proceeds of $2500 to the credit of C. H. Weiss, in the Holston Union National Bank. Ramsey did not pay the $2500. It is shown that it was the Trust Company's custom or mode of procedure to re-purchase the notes that it had sold to its various customers, at maturity or shortly thereafter, if the makers or persons obligated to pay the same failed to pay off and discharge the indebtedness. The Trust Company's officers show that this was necessary to make the bonds or notes they handled salable and to preserve the salability of their bonds or the bonds handled by them.

It is complainant's insistence that this $2500 held by Weiss was re-purchased from him by the Trust Company as agent of J. Basil Ramsey, and that, therefore, the Holston Trust Company was not a true and innocent holder of said bonds for value; that J. Basil Ramsey had ordered the said Trust Company to pay off said bonds as his agent and hold them as evidence of his personal liability to the defendant Trust Company.

It is further insisted that as a result of this transaction the defendants held said bonds simply as the agents of J. Basil Ramsey, and that they have no lien against the premises described, and that they are estopped to claim that said bonds, purchased under these conditions, constitute a superior lien to that of the complainant upon the premises.

On September 29, 1931, the complainant was granted liberty by the Court of file an amended bill, and in this amended bill he alleged that during the summer of 1930, J. Basil Ramsey was guilty of certain very questionable business practices in the management of the defendant, Holston Trust Company, and its allied institution, Holston-Union National Bank, which were corporations of great magnitude, so as to gravely endanger both companies. That the officers, directors of said two institutions knew of Ramsey's mismanagement and improper conduct, and knowing the danger involved, the defendant Trust Company made no effort to obtain satisfaction or payment of the $2500 bonds assumed by Ramsey. That the defendant, Holston Trust Company was guilty of such gross negligence and laches in standing by in the face of an impending catastrophe, and that it is now estopped to assert a priority over the notes of complainant.

The amended bill also alleged that the ownership of the premises involved had been changed since the filing of the original bill. That there had been a foreclosure under the second mortgage subject to unpaid taxes and the $8000 admitted to be prior to complainant's notes.

The Trust Company and the Receiver alleged and asserted that they were the true and innocent holders of bonds Nos. 378 to 382, inclusive, in the aggregate amount of $2500. They denied that the defendant, Holston Trust Company purchased said bonds as agent for its President, J. Basil Ramsey, or that it holds said indebtedness of bonds as the evidence of the personal liability of said Ramsey.

These defendants thereupon assumed the character of cross-complainant and asked for a money judgment against Moss Yater, for $10,500.

Yater answered the cross-bill, admitting the execution of the trust, and among other things, in his answer, he alleged that defendant, Holston Trust Company, puchased the bonds described after maturity or paid them off for the said Ramsey, and in either case used no diligence to obtain payment of them by Ramsey; in fact, during the period while it was holding said bonds continued to pay Ramsey large salaries which would have been sufficient to retire the bonds. That under these circumstances the defendant trust company, charged with knowledge of the danger inherent in the situation, was guilty of such gross negligence in failing to protect itself that it is now

estopped to seek payment of said notes from the cross-defendant, who is but a surety for the said Ramsey.

Quite a bit of evidence was taken. The Chancellor held and decreed:

(1) That the proof does not sustain the allegations of the original bill, and the complainant was not entitled to the relief he sought and his bill was dismissed. The Chancellor sustained the cross-bill of Frank L. West, Receiver, and the Holston Trust Company. He gave a judgment against Yater for $2500 as principal on said bonds, with interest accrued thereon, and attorneys' fees, making the total judgment of $2931.50.

The court further decreed that the bonds, secured by the first mortgage bearing date of September 1, 1927, were superior to the lien of complainant which was secured by a second mortgage executed by Moss Yater on January 4, 1928, for the purpose of securing complainant in the sum of $8500.

The property described in the pleadings and the decree and in two deeds of trust, executed by Moss Yater, was ordered sold and the proceeds derived from the sale thereof applied to the satisfaction of a decree for $2931.50 awarding to the cross-complainant, and for any interest accruing on said indebtedness subsequent to the rendition of the decree in this cause.

The decree then proceeds as to how the property shall be sold, terms, etc.; We quote the following:

"To the action of the court in dismissing his bill, in denying him the relief thereby sought, in sustaining the cross-bill of the cross-complainants and decreeing them the relief thereby sought, and to all other actions of the court averse to him, the complainant, Leon Jourolmon, Jr., and the cross-defendant, Moss Yater, except and pray an appeal to the next term of the court of Appeals of Tennessee, sitting at Knoxville, which appeal is granted on condition that the appellants, or appellee, file a proper appeal bond conditioned as required by law, and upon application of the appellants they are granted ten days within which to file said appeal bond."

This decree was entered November 19, 1931, and within the ten days the complainant executed an appeal bond.

The defendant, Moss Yater, did not comply with the conditions or terms of the decree granting an appeal, but on November 16, 1931, filed a pauper's oath instead of an appeal bond.

The complainant has assigned 12 errors. These errors raise four questions, and they will be grouped into four groups. The question to be determined on this appeal are as follows:

(1) Was the Holston Trust Company acting as agent of its president, J. B. Ramsey, when it purchased or paid C. H. Weiss the $2500 for the five bonds, on September 8, 1930.

(2) Was the act of the Holston Trust Company, under the circumstances in paying Weiss and taking over the $2500, a fraud upon the rights of the complainant.

(3) Has the Holston Trust Company, by its acts, been guilty of laches, and thereby estopped itself from claiming priority over the lien of complainant.

(4) Is the Holston Trust Company entitled to be subrogated to the rights of Weiss, the original holder, and entitled to the same benefit as if Weiss would have in the premises.

The defendant to the cross-bill, Moss Yater, has assigned nine errors. He raises in these errors practically the same questions that are raised by the assignments of complainant, however we cannot consider these assignments of the defendant, Yater.

"Where the appeal is granted upon the appellant giving bond as required by law, it cannot be perfected by taking the pauper's oath." McPartridge v. Gregg, 4 Caldwell, 326; Henley v. Claiborne, 1 Lea, 224; Mowry v. Davenport, 6 Lea, 82; Morris v. Smith, 1 Shannon, 27.

The record discloses that the Dempster Construction Company and J. B. Ramsey are both wholly insolvent. At the time Yater conveyed to Ramsey, Ramsey was regarded as one of the financial pillars of the City of Knoxville. He was drawing a salary of $15,000 per year. He kept his interest paid up on the two loans that he had assumed, which Yater had made. He, also, paid $2000 to the complainant when the same matured. The complainant states that he extended the $2000 that matured January 4, 1930, at the request of Ramsey and Mr. Frierson, the cashier of the City National Bank of Knoxville. It appears that the complainant had borrowed from the City National Bank on Ramsey's note: No one thought of Ramsey being insolvent, until after the collapse of the Holston Union National Bank. After this Bank failed and following this financial crash, the Holston Trust Company was placed in the hands of a Receiver. It appears that real estate, in the City of Knoxville, decreased in value from twenty-five to fifty per cent. The property, the building which Yater completed was worth in value the amount of complainant's and defendants' debts. It was not at the time of the proof taken in this case worth more than $14,000.

There is much in complainant's brief touching upon the financial depression that visited Knoxville, that caused the failure of the Holston Union National Bank and its allied institution, the defendant, Holston Trust Company. But as to why there was a depression, what caused it, it is very much like the description of the wind as

given by the great teacher to the lawyer, who visited him at night. "The wind bloweth where it listeth, and thou hearest the sound thereof, but canst not tell whence it cometh, and whither it goeth." We judicially know that the depression has come, but from whence it cometh and whither it goeth, we know not.

It appears that the Holston Trust Company, within four or five years prior to its receiver, had issued and sold more than one million in notes and bonds, secured by real estate in Knoxville and the vicinity thereof and to enable it to sell the bonds and notes executed for borrowed money from the Trust Company, it established and followed the custom so that when any bond or interest coupon became payable, and the person issuing same failed to meet the payment of principal or interest, the Holston Trust Company would re-purchase the bond or interest coupon that was due. It followed this custom so that to keep its customers or purchasers of paper that floated through its Trust Company from becoming dissatisfied, and this was regarded by the officers of the Trust Company as good business. We find from the proof of the Trust Officers of the said Trust Company, who were examined, that the $2500 paid to Weiss was not paid at the request of J. Basil Ramsey and was not held by the Trust Company as a personal obligation of Ramsey, but was purchased in conformity with the Trust Company's established policy or custom. And the $2500 purchased from Weiss was the property of the Trust Company at the time Frank L. West was appointed Receiver.

We are of the opinion that by reason of the Trust Company not advertising and foreclosing the trust deed executed by Yater and assumed by Ramsey, and waiting on Ramsey for nearly two and one-half months, was not such a neglect or not such laches as would estop the defendants.

It appears that the complainant is a good business man as well as a splendid lawyer. He extended his $2000 note that was due January 4, 1930, for a year, and in making this extension to Ramsey of the $2000, the complainant acted on the advice of Mr. Frierson, a Banker and the Cashier of the City National Bank. Complainant thought it was safe to extend credit to Ramsey. Mr. Frierson, the Cashier of another Bank of Knoxville, thought it was safe and good business to make an extension to Ramsey. Therefore, we are of the opinion that the Trust Officers of the Holston Trust Company had good reasons for extending credit or not foreclosing on the $2500 due September 1st. We find no acts of the Holston Trust Company that would amount to a fraud upon the rights of complainant; that the Trust Company did not purchase the $2500 in bonds from Weiss as the agent of its president, J. B. Ramsey. We are of the opinion that the Trust Company should have all the rights by reason of its owning said $2500,

210

that C. H. Weiss would have if he now owned the $2500 in bonds. In other words, they were never paid by the maker, and they were never paid by the party who assumed the payment thereof. When the complainant made his loan to Yater, he knew that there was a superior trust to his loan to the amount of $10,500.

Complainant and his counsel in their able brief have cited many authorities and have advanced numerous legal propositions. These legal propositions and principles of law either support the holdings of the Chancellor or are not applicable to the facts surrounding this litigation.

It results that all the assignments of error of the complainant are overruled and disallowed. The judgment of the lower court is affirmed. The appellant, Moss Yater, has received the benefit of all of his assignments, by the assignments made by the complainant. The complainant and his surety on appeal bond will pay the costs of the cause, for which execution will issue. This cause will be remanded to the Chancery Court of Knox County, for the purpose of the sale ordered by the Chancellor, and for any other steps necessary to carry out his decree.

Heiskell and Senter, JJ., concur.