**In re TOTAL CARE, INC., Debtor.**

**Bankruptcy No. 83-20346-D(sbb).**

**Adv. No. 88-0304.**

United States Bankruptcy Court, W.D. Tennessee, W.D.

July 6, 1989.

---

1. 28 U.S.C. § 157(b)(2)(K).

---

D. Russell Jones, Jr., Southaven, Miss., for Glenmore Academy.

William Gotten, Memphis, Tenn., for debtor.

Erich W. Merrill, Memphis, Tenn., for Memphis Christian Academy Bondholders Committee.

Hunter Lane, Jr., Memphis, Tenn., for Total Care, Inc.

MEMORANDUM OPINION AND ORDER ON COMPLAINT TO ESTABLISH PRIORITY BETWEEN CLASSES OF BONDHOLDERS AND FOR DECLARATORY JUDGMENT

BERNICE BOUIE DONALD, Bankruptcy Judge.

The above-styled core proceeding [1] was before the Court for trial on May 15, 1989. This adversary proceeding [2] was instituted by the filing of a complaint by Memphis Christian Academy bondholders, to establish priority between classes of bondholders. The sole issue for the Court's deter-

2. The court certified this matter as a class action pursuant to Fed.R.Civ.P. 23(b)(1) & (2), and Bankruptcy Rule 7023.

mination is the order of priority of mortgages which secure the bonds issued by Memphis Christian Academy ("MCA"), Glenmore Academy ("Glenmore") and Total Care, Inc., debtor. The following shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

*Case Summary*

MCA, a Tennessee Corporation with its principal place of business in Shelby County, Tennessee, was formed in 1973 for religious educational purposes. In June of 1974, MCA executed a deed of trust encumbering real property located in Shelby County, Tennessee, consisting of 11.12 acres of land on Knight Arnold Road. The property was purchased and the school was established as a result of the execution of the deed of trust. MCA then issued a series of bonds. The deed of trust equally secured the payment of principal and interest on all bonds issued thereunder. However, the deed of trust contained certain limitations as to any subsequent issuance of bonds. In particular, on page 10, the language of the deed of trust [3] states: "Except for additional series of bonds that may be issued without restrictions on or before April 1, 1974, in an amount not to exceed $265,000.00, the bonds of subsequent series may be issued at any time, or from time to time subject to the following limitations and conditions:

1) The aggregate principal amount of bonds of First Mortgage Bond Series, July 1, 1973, together with bonds of subsequent series outstanding or proposed to be issued, shall not exceed in the aggregate 75% of the reasonable value of the land, buildings, and equipment owned and operated by the issuer, and included in the lien of this deed of trust together with that acquired by application of proceeds of such additional bonds.

2) The bonds of subsequent series shall be issued only for the purpose of purchasing additional property, making additions and improvements to the land, buildings, and equipment owned and op-

erated by the issuer, and included or to be included in the lien of this deed of trust.

3) The total aggregate amount of the bonds outstanding, together with the amount of bonds proposed to be issued shall not exceed five times the annual income of the issuer as determined by the income of the 24 months immediately proceeding the proposed bond issue.

4) The issuer is not to default under any provision of the deed of trust, or any other bonds outstanding."

The initial bond series, entitled First Mortgage, 7½% compound interest bonds, series of July 1, 1973, was issued in the sum of Five Hundred Twenty-five Thousand Dollars ($525,000.00). The deed of trust, on page 2, states that the money is borrowed "for such capital improvements, including debt consolidation, and construction and equipping of the building and/or buildings which it intends to erect and remodel" with the proceeds.

The deed of trust also states that each subsequent bond issue shall be known as First Mortgage Serial Sinking Fund Bonds. Further, any supplemental deed of trust evidencing a subsequent series of bonds shall conform to all the provisions of the initial deed of trust, and be considered as a supplement thereto, and all such bonds issued thereunder would be secured equally with the first series. The deed of trust further stipulates that in the event of a default by the mortgagor, interest would be payable on the bonds.

MCA entered the trust agreement with Commercial and Industrial Bank of Memphis, which would provide a method of carrying out the system of repayment of the bonds. Basically, Commercial and Industrial Bank of Memphis, as trustee and paying agent, would disburse funds from the sinking fund account established by MCA, to bondholders.

A supplemental deed of trust [4] was executed by MCA on October 4, 1974, but dated April 1, 1974. The trustee of the deed was Commercial and Industrial Bank

3. Register's No. J6 9276.

4. Register's No. J9 2769.

of Memphis. This supplemental deed was used to secure the second series of bonds entitled Series of April 1, 1974, First Mortgage Serial Sinking Fund Bonds, in the amount of Two Hundred Sixty-five Thousand Dollars ($265,000.00). The supplemented deed of trust, on page 9, under the heading *terms and conditions*, states that this subsequent series of bonds is secured by a first mortgage on the Knight Arnold property. Furthermore, in the event of default, the supplemental deed of trust provided for the payment of principal and interest on the bonds. The second series of bonds was issued to receive funds for improving and remodeling the campus. This supplemental deed of trust incorporates by reference the original deed of trust, Register's No. J6 9276.

A subsequent supplemental deed of trust[5] was executed by MCA on October 1, 1975, dated May 15, 1975. The trustee and paying agent in this transaction was Commercial and Industrial Bank of Memphis. The supplemental deed of trust secured the issuance of a third series of bonds by MCA entitled Series of May 15, 1975, First and Refunding Mortgage Serial Sinking Fund Bonds in the amount of Two Hundred Sixty-five Thousand Dollars ($265,000.00). This series was issued for the purpose of refunding the Series of April 1, 1974 bonds in the amount of Two Hundred Sixty-five Thousand Dollars ($265,000.00). Under the terms and conditions of this supplemental deed of trust, the bonds were secured by a first mortgage on the property of the issuer. This supplemental deed of trust incorporates by reference the original deed of trust, Register's No. J6–9276.

In May of 1976, Marie's Schools and Glenmore Academy consolidated to form Glenmore Academy, Inc. Glenmore Academy was a Tennessee non-profit corporation providing nonsectarian educational and daycare services. On March 26, 1976, an agreement[6] was entered between MCA and Glenmore for the sale of the property located at 3101 Knight Arnold Road to Glenmore to be used as a nonsectarian Christian school. MCA, unable to meet its financial obligations in a timely manner, sold the property subject to the existing mortgages. However, one condition of the contract was that Glenmore be able to market a Three Hundred Thousand Dollar ($300,000.00) second bond series.

Glenmore executed a deed of trust[7] on May 13, 1976, dated May 1, 1976. The trustee in this transaction was H. Wallace Maroney, Jr. The paying agent, was First National Bank, located in Memphis, Tennessee, also called the Depository Bank. The deed of trust secured the issuance by Glenmore, of a series of bonds known as General Subordinated Mortgage Serial Sinking Fund Bonds, Series of May 1, 1976, in the amount of Three Hundred Thirty Thousand Dollars ($330,000.00). This series of bonds was issued to allow Glenmore to finance certain capital improvements, to construct a gymnasium, and to build classrooms. In the deed of trust, on page 8, is language to the effect that all bonds issued hereinunder shall be inferior and subordinate to the first mortgage bonds previously issued as First Mortgage Bonds, Series 1973–A in the original principal amount of Five Hundred Twenty-five Thousand Dollars ($525,000.00), and the First and Refunding Mortgage Bonds, Series of May 15, 1975, in the original principal amount of Two Hundred Sixty-five Thousand Dollars ($265,000.00). Further, the deed of trust provided that in the event of default, interest and principal would be payable on the bonds.

The Glenmore deed of trust allowed subsequent series of bonds to be issued. Moreover, a condition to issuing a subsequent series of bonds was set forth in the deed of trust.[8] Also, all bonds issued under the Glenmore deed of trust were to be secured equally with all other bonds of other series issued thereunder.

5. Register's No. K9 7387.

6. Trial Exhibit 4.

7. Register's No. L2 6107.

8. See conditions set forth, supra, at page 647 enumerated 1–4.

Subsequently, Total Care, Inc., bought out the interest of Glenmore Academy, Inc. Thereafter, a supplemental deed of trust dated October 1, 1978, was entered between Total Care, Inc., debtor, and H. Wallace Maroney, Jr. This supplemental deed of trust was executed on October 23, 1979, dated October 1, 1979. H. Wallace Maroney, Jr. is the trustee in this transaction, and the depository and/or paying agent is the Bank of Germantown, Germantown, Tennessee.

Debtor issued a series of bonds entitled General Subordinated Mortgage Sinking Fund Bonds, Series of October 1, 1979, in the amount of Two Hundred Twenty-seven Thousand Dollars ($227,000.00). The purpose of this issuance was to pay and/or refund certain indebtedness including the debt incurred in the acquisition of Glenmore. The Total Care deed of trust does not incorporate by reference the original deed of trust of MCA. However, it does incorporate by reference the original deed of trust by Glenmore. The Total Care deed of trust recites the indebtedness of the Series of May 1, 1976, General Subordinated Mortgage Serial Sinking Fund Bonds. Yet, this deed of trust does not make mention of the outstanding bonds issued under the MCA deed of trust. Under the terms and conditions of the Total Care deed of trust, the bonds issued thereunder were to be secured by a first mortgage on the property located at Knight Arnold Road. This series of bonds is known as the General Subordinated Mortgage Serial Sinking Fund Bonds, Series of October 1, 1979, in the amount of Two Hundred Twenty-seven Thousand Dollars ($227,000.00). Debtor later issued General Obligation Revenue Bonds, Series of April 1, 1980, in the amount of Seventy-three Thousand Dollars ($73,000.00).[9]

The debtor's bankruptcy case was instituted in 1973 for a reorganization of the debtor corporation, but later debtor proposed a liquidating plan.[10] The proposed plan of reorganization submitted by the bondholders committee was confirmed by this court under the acceptance method on May 15, 1989. Under the plan, the major indebtedness is to the bondholders and all such claims are treated as impaired.

After a brief recitation of the facts to determine the posture of this case, the court must ascertain the order of priority among the mortgages which secure the bonds in question.

In MCA's complaint, it alleges that all bonds issued under deeds of trust entered by MCA are prior and superior to any subsequently issued bonds by Glenmore and Total Care. The complaint also states that the third issue by MCA complied with the requirements in its original deed of trust. Further, MCA argued at the trial, that in order for any subsequent bond issuances to be equal, they must comply with the conditions set forth in the original deed of trust of MCA. During the hearing, MCA argued that the subsequent bond issuances by Glenmore and debtor did not in fact comply with the original deed of trust limitations or requirements.[11]

Glenmore argued at the hearing that the third series of bonds issued by MCA did not meet the requirements of the original deed of trust of MCA as far as time and purpose. Namely, Glenmore argued that the third series of bonds were actually issued April 15, 1975, instead of prior to April 1, 1974. Therefore, the third series of bonds issued by MCA failed in their purpose because they were used to refund the second series of bonds issued by MCA. Glenmore's prayer is that the bonds issued under the Glenmore deed of trust be

---

**9.** In plaintiff's complaint, at page 8, is stated that the instrument authorizing the issuance of the Seven Hundred Seventy-three Thousand Dollar ($773,000.00) Series of Bonds, was not intended as a mortgage. Further, counsel for the parties did not introduce any documentation as to supplemental deeds of trust issued by debtor, other than the above-referenced supplemental deed of trust dated October 1, 1979.

**10.** The debtor filed its voluntary petition under chapter 11 of the United States Code on January 28, 1983, and has served as debtor-in-possession since the commencement of the case.

**11.** MCA's argument was never substantiated by proof at trial. Mere allegations will not suffice to prove a point at issue.

deemed superior to those issued by MCA, and those issued by Total Care, Inc. Further, Glenmore asks the court to disallow any interest on the MCA bonds in the event that they are deemed superior, as to allow such interest would devour the other claims.[12]

The Court will note, at the outset, that in order to determine some of the questions presented by the parties in this proceeding, it will be necessary to ascertain the annual income of the debtor in certain years, as well as to determine the value of the property in question at various periods in the past.[13] Also, the court must review the current value of the claims of each set of bondholders.[14] However, this task has been made most difficult by the fact that counsel for the parties have failed to adequately apprise the court of the outstanding bond balances, and interest due thereon, as well as, providing adequate proof of annual income of the entities involved and land value.[15]

### Discussion

In Tennessee, the law governing priority of registered instruments is outlined in T.C.A. § 66–26–105, which states in pertinent part:

**66–26–105. Priority of registered instruments.**—Any of said instruments first registered or noted for registration shall have preference over one of earlier date, but noted for registration afterwards; unless it is proved in a court of equity, according to the rules of said court, that the party claiming under the subsequent instrument had full notice of the previous instrument.

According to the statute, the first instrument recorded holds a priority status over a subsequently recorded instrument. Yet, the statute limits the effect of a race to the courthouse by providing that a party claiming a priority status under a subsequent mortgage who has notice of the prior mortgage, will not gain priority status. Thus, priority of registered instruments is governed by a race-notice statute in Tennessee. However, it has been held that priority may be affected by provisions in the mortgage. *New River Lumber Co. v. Tennessee Railway*, 136 Tenn. 661, 191 S.W. 334 (1916).

In the present case, the pertinent recording dates are as follows:

1. Deed of trust (J6 9276), dated July 1, 1973, and executed June 19, 1974, was filed in the Register's office located in Shelby County, Tennessee, on June 19, 1974.

12. A post-hearing memorandum on behalf of the Memphis Christian Academy Bondholders Committee concerning interest on secured claims was filed June 6, 1989.

13. Appraisals:
Exhibit 6—August 22, 1973, Value    $ 671,085
Exhibit 7—February 1, 1979, Value    1,884,000
Exhibit 8—December 14, 1983, Value   1,200,000
Exhibit 9—May 15, 1989, Value, Appx. 725,000 to 750,000

14. At trial, the parties stated that the original face value of the outstanding first series of MCA bonds was estimated in the principal amount of $194,000.00, and $450,982.00 with interest. Also, the third bond series of MCA outstanding is estimated at the original face value in the principal amount of $159,400.00, and $329,-359.00 with interest. The court acknowledges that these figures are somewhat speculative as so indicated by the parties. Further, there was no testimony as to the outstanding balances of the Glenmore and Total Care bonds.

15. The court is frustrated by the feeble attempt of the parties at trial, to present their respective cases. In order to accurately ascertain the answers to legal questions, the court must have presented to it, an accurate description of the facts, the legal argument with applicable law and the relief requested. Yet in this instance, the parties abandoned ship before it left the dock, basically giving opening statements, presenting testimony from witnesses who recall little of the events in question, and introducing exhibits consisting of the deeds of trust and some real estate appraisals from various years. Bankruptcy Courts deserve the respect of other courts of law and equity including, but not limited to, proper preparation and research by the attorneys which would enable them to present relevant information in the form of proof at trial, instead of, as in the instant case, conjecture resulting in unsubstantiated conclusions.

2. Deed of trust (J9 2789), dated April 1, 1974, and executed October 4, 1974, was filed in the Register's office located in Shelby County, Tennessee, on October 11, 1974.

3. Deed of trust (K9 7387), dated May 15, 1975, and executed October 1, 1975, was filed in the Register's office located in Shelby County, Tennessee, on February 20, 1976.

4. Deed of trust (L2 6107), dated May 1, 1976, and executed May 13, 1976, was filed in the Register's office located in Shelby County, Tennessee, on May 13, 1976.

5. Deed of trust (P8 7995), dated October 1, 1979, and executed October 23, 1979, was filed in the Register's office located in Shelby County, Tennessee, on November 1, 1979.

Based on the order of recording alone, MCA bondholders would be first, Glenmore second, and Total Care third. However, the court must scrutinize the language of each deed of trust[16] to ascertain the agreement between the parties, and what information was conveyed to bondholders by way of disclosure through the indentures themselves.

Once registered, a deed or other instrument, is deemed to be notice to the world. T.C.A. § 66–26–102. Therefore, each bondholder is held to have notice of the prior mortgages securing previous bond series since the deeds of trust were properly filed and recorded, leaving those interests perfected.

Each deed of trust heretofore mentioned, contains language to the effect that all bonds issued thereunder would hold equal priority. Thus, it is clear that bondholders of MCA, Glenmore, and Total Care are equal within their respective classes or series. Further, the Glenmore deed of trust states that all such bonds issued thereunder would be subordinate to the prior issuances by MCA. This language is but another indicator that the Glenmore bonds were intended to be subordinate. How-

ever, one flaw in this tangled web of bond priorities, is that the Total Care deed of trust does not, on its face, recognize the prior mortgage of MCA, or the corresponding bond issues. Yet, it does set forth the nature of the indebtedness of Glenmore and the corresponding bonds.

If comparing the Glenmore and Total Care deeds of trust, it can be seen that in the former deed, all prior indebtedness is noted, yet in the latter deed, the initial mortgage fails to appear, that is, the mortgage of MCA. However, even in the absence of a notation of a first mortgage in the Total Care deed of trust, its bondholders are charged with notice of the MCA mortgages since they were properly recorded.

The Tennessee Court of Appeals has held that purchasers of bonds secured by a first deed of trust are entitled to priority over holders of debts secured by a second deed of trust. *Jourolmon v. West,* 15 Tenn. App. 203 (1932). However, *Jourolmon,* does not address the issue of noncompliance with deed of trust provisions by the mortgagor. Thus, it stands in a different posture than the instant case, and the arguments proffered herein.

The court must assess the argument posed by the Glenmore bondholders. Initially, the court will note that the Glenmore bondholders have asserted two affirmative defenses. The first is that the plaintiffs failed to state a claim upon which relief can be granted. Clearly, the plaintiffs have proven that a valid question exists as to the priority of the mortgages securing the bonds, and the court has a duty to ascertain the order of priority. Thus, this first affirmative defense must fail. Secondly, the defense of estoppel has been raised by Glenmore. Glenmore alleges that MCA knew, or should have known that all subsequent issues and series of bonds, if complying with the provisions in the original MCA deed of trust (J6 9276), would have equal liens on the property. Thus, MCA is estopped from denying that the Glenmore

---

**16.** The court notes that the deeds of trust herein referred to may also be labeled trust indentures. The parties did not indicate that any other trust indentures were involved, but not introduced into evidence.

bondholders have an equal lien on the property.

Under the theory of equitable estoppel, a party is precluded from asserting rights against another who has justifiably relied on such conduct. The essential element of equitable estoppel is a detrimental change of position by the party asserting estoppel. In the present case, Glenmore alleges MCA knew or should have known, that the Glenmore bonds were equal in priority. However, the court finds no voluntary conduct by MCA which would meet the requisites for equitable estoppel.[17] Thus this affirmative defense is without merit.

The most crucial argument to be addressed is that posed by Glenmore. Glenmore asserts that the third series of bonds entitled series of May 15, 1975, was issued after the April 1, 1974 date, and therefore, must comply with the MCA original deed of trust provisions. The original deed of trust[18] provided that any series of bonds issued after April 1, 1974, must meet certain requirements.[19] Glenmore then asserts that the third series of MCA bonds, series of "May 15, 1975", failed to meet the requirements of the MCA original deed of trust insofar as these were issued for the purpose of refunding the second series. Such purpose is not permissible under the provisions of the MCA deed of trust.

In assessing the aforementioned arguments, it is clear that MCA, in paragraph 4, page 2 of its complaint, alleges that the Series of May 15, 1975, bonds met the provisions of the deed of trust. Thus, MCA does not allege this series was issued prior to the April 1, 1974, date nor does it dispute that said series had to comply with the deed of trust.

The Series of May 15, 1975, bonds were issued to restructure the debt of the prior issuance, basically, refunding the second issue; Series of April 1, 1974.

Clearly, refunding the prior issue does not come within the ambit of the requirements outlined in the original deed of trust. Thus, the court must ascertain the consequences of the failure of MCA's third bond issue to comply with the original deed of trust.

Glenmore would have this court reduce the priority of the MCA bonds as a result of the failure of MCA to follow the provisions of its own deed of trust. The deed of trust does not contain language which provides for this remedy in the event that the provisions are not followed in subsequent bond issuances.

A deed of trust is a contract requiring mutual assent by the parties involved. When a material default under the deed of trust occurs due to the failure of one party to carry out the terms of the deed, an action at law may lie. In an action for material default, oftentimes the remedy at law is damages.

Assuming arguendo, that a material default resulted by MCA's third series being issued to refund the prior issue, the aggrieved or affected parties should sue on the deed of trust.[20] The provisions of the mortgage may affect priority. *New River Lumber Co. v. Tennessee Railway*, 136 Tenn. 661, 191 S.W. 334 (1916).

In *New River Lumber Co.*, the mortgage contained language stating the "indenture is executed with notice of the prior rights of the parties". Such language affected not only the mortgagee, but also holders of bonds secured by the mortgage.

In the MCA deed of trust,[21] it states that on the failure of the Academy (MCA) to observe or perform the covenant conditions in the deed, the trustee shall proceed with appropriate legal action to protect the interests of the bondholders. A court of competent jurisdiction could then enforce the terms of the deed of trust according to the trustees request. However, in this

17. Cf., *People's Bank & Trust Co. v. Potter*, 156 Tenn. 649, 4 S.W.2d 341 (1928).

18. Exhibit 1, Register No. J6 9276.

19. Exhibit 1, Register No. J6 9276 at page 10.

20. However, the court does not voice an opinion on the standing of Glenmore to sue on the deed of trust, executed between MCA and the mortgagee, Commercial & Industrial Bank.

21. See, page 14 of MCA Deed of Trust.

case, the trustee, Commercial & Industrial Bank of Memphis, did not assert the default of MCA under the terms of the deed of trust. Instead, Glenmore now alleges the possibility of a material default some fourteen years later.[22]

The court will decline the invitation to assess the materiality of the default in this matter by ascertaining its impact on priority. The law is clear on priority of mortgages in Tennessee, and settled law shall dictate priority in this matter.

It is therefore held that the MCA bondholders hold a valid first lien on the property by proper recordation of the deed of trust, and those supplemental thereto. Next in line of priority are the Glenmore bondholders followed by Total Care bondholders.. Further, the deeds of trust provide for the payment of interest in the event of default.

11 U.S.C. § 506(b) provides:

§ 506. **Determination of secured status.**

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

According to this section, creditors holding over-secured claims are entitled to postpetition interest. See, *Matter of Glenn,* 796 F.2d 1144 (9th Cir.1986), *In re Bates,* 58 B.R. 915 (Bankr.W.D.Tenn.1986).

Glenmore argues that to allow interest on the claim of the first mortgage lienholders would, in essence, devour any funds left over for the remaining bondholders.[23] Yet, the law is clear that secured parties are entitled to such interest despite the fact that other subordinate claims will not be paid. *Matter of Glenn,* 796 F.2d at 1144. Considerations of equity must yield to principles of law.

### Conclusion

Therefore, based on the foregoing and the record as a whole, the court deems MCA to hold a first mortgage on the property followed by a second mortgage by Glenmore and a third mortgage by Total Care, Inc. The court will allow interest on the claims as prioritized above based on the stated interest rates in the deeds of trust and the bonds themselves.

IT IS SO ORDERED.

---

22. The court is hard-pressed to rule that non-compliance by MCA with the terms of the deed of trust constitutes a material default, and thereby, warranting MCA bondholders to be subordinate to Glenmore. To hold such would put into question the priority statutes enacted by the Tennessee Legislature, and would delve into state law contract areas, where this court chooses not to intrude.

23. As a result of inadequate proof submitted on this point, the court has accepted this allegation as true absent any objection at trial by adversary counsel. MCA submitted a post-hearing memorandum concerning interest on the bondholders claims.